FILED
2012 Jun-04  AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VESTAVIA PLAZA, LLC,                    )
                                        )
              Plaintiff,                )
vs.                                     )
                                        )    Case No.        2:11-cv-4152-TMP
CITY OF VESTAVIA HILLS,                 )
ALABAMA, *et al.*,                      )
                                        )
              Defendant.                )
                                        )

## MEMORANDUM OPINION

This cause is before the court on the defendants' motion to dismiss the complaint.  (Doc. 4).

The defendants in this action are the City of Vestavia Hills, Alabama ("the City"); George Pierce,

Steve Ammons, and Jim Sharp, members of the Vestavia Hills City Council; Alberto "Butch"

Zaragoza, Mayor of the City; and Rebecca Leavings, City Clerk of the City.  The plaintiff is Vestavia

Plaza, LLC ("Vestavia Plaza").  All parties have fully briefed the motion.[1]  The parties have

consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

Having reviewed all the pleadings and having considered all of the arguments set forth by the parties,

the court finds that the motion is due to be granted.

---

[1]  Various motions to strike and for leave to file amended responses will be discussed below.

## PROCEDURAL BACKGROUND

On December 9, 2011, Vestavia Plaza filed a complaint (doc. 1), which sets forth ten counts for legal relief, including both state-law claims and federal claims arising under 42 U.S.C. § 1983, as follows:

1. (Count I): Arbitrary and Capricious Denial of Business License in Contravention of State Law by All Defendants;

2. (Count II): Violation of 42 U.S.C. § 1983 for Deprivation under Color of State law of Substantive Due Process as guaranteed by 14th Amendment of the United States Constitution by All Defendants;

3. (Count III): Violation of 42 U.S.C. § 1983 for Deprivation under Color of State law of Procedural Due Process as guaranteed by 14th Amendment of the United States Constitution by All Defendants;

4. (Count IV): Violation of 42 U.S.C. § 1983 for Deprivation under Color of State law of Equal Protection as guaranteed by 14th Amendment of the United States Constitution by All Defendants;

5. (Count V): Violation of 42 U.S.C. § 1983 for Deprivation under Color of State law of Associational Rights as guaranteed by 1st and 14th Amendments of the United States Constitution by All Defendants;

6. (Count VI): Violation of 42 U.S.C. § 1983 for Deprivation under Color of State law of Property Without Just Compensation as guaranteed by the 5th and 14th Amendment of the United States Constitution by All Defendants denying a business license;

7. (Count VII): Violation of 42 U.S.C. § 1983 for Deprivation under Color of State law of Property Without Just Compensation Due Process as guaranteed by 5th and 14th Amendment of the United States Constitution by All Defendants through enforcement of unconstitutionally vague and overbroad Ordinance Number 2315;

8. (Count VIII): Violation of 42 U.S.C. § 1983 for Conspiracy to Interfere with Civil Rights by All Defendants;

9. (Count IX): Wrongful Interference with Business Relations by Pierce, Ammons, Sharp, Zaragoza, and Leavings, Individually; and

10. (Count X): Civil Conspiracy by Pierce, Ammons, Sharp, Zaragoza, and Leavings, Individually.

The defendants filed their motion to dismiss the complaint on January 3, 2012. (Doc. 4), making various arguments, including the assertion that the plaintiff lacks standing to bring the complaint. Vestavia Plaza filed its response to defendants' motion to dismiss on January 31, 2012, and filed an accompanying motion to strike evidence submitted in support of defendants' motion to dismiss. (Docs. 12 and 13). Because the facts relevant to the arguments made here turn on whether the exhibits attached to the motion to dismiss will be considered, the court first turns to the motion to strike.

When "material beyond the pleading is offered in conjunction with a 12(b)(6) motion" a court "has discretion as to whether to accept [the] material beyond that pleading." Property Management & Investments, Inc. v. Lewis, 752 F.2d 599, 604 (11th Cir. 1985) (citing Ware v. Associated Milk Producers, Inc., 614 F.2d 413, 415 (5th Cir. 1980). A district court must either exclude the additional material and decide the motion on the complaint alone or, if the additional material is accepted, convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56 and afford all parties the opportunity to present supporting material. Fed. R. Civ. P. 12(d); Trustmark Insurance Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002). Not every exhibit annexed to a motion to dismiss, however, is considered "outside the pleading." For example, in Financial Security Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276 (11th Cir. 2007), the court of

appeals noted an exception to the general rule of excluding evidentiary matters not attached to the complaint:

> Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir.1997).  This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss.  Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir.1999); Brooks, 116 F.3d at 1368-69.

Financial Security Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007); see also Halmos v. Bomardier Aerospace Corp., 404 Fed. Appx. 376, 377 (Dec. 7, 2010) (on reviewing a Rule 12(b)(6) motion to dismiss, the court may consider documents incorporated into the complaint by reference).

In the instant case, the motion to dismiss is supported by two exhibits: the affidavit of defendant Rebecca Leavings (Doc. 5-1) and a copy of the Vestavia Hills Business License Code, Ordinance 2315 (Doc. 5-2).  The affidavit by Leavings has exhibits attached to it also, including copies of a business license application by the Downtown Jimmie Hale Mission, Inc. ("JHM"), minutes of the Vestavia Hills City Council meetings in December 2010 and January 2011, and an unsigned draft of an agreement among JHM, plaintiff, and the defendant City concerning issuance of a business license to JHM.  While certainly the affidavit testimony of Leavings must be stricken, several of the other documents are expressly referred to in the complaint.  For instance, Ordinance 2315 is not only referred to, but portions of it are quoted in the complaint.  Likewise, the complaint expressly refers to a "Proposed Agreement" drafted by the Vestavia Hills City Attorney that was later submitted to the Vestavia Hills City Council in connection with JHM's business license application.

Although defendant has moved to strike all of these exhibits, it has not contested the accuracy  or completeness of the ordinance or draft agreement submitted as exhibits to the motion.  These documents obviously are central to the plaintiff's claims, as shown by the fact that plaintiff has cited to them in the complaint.  It appears, therefore, that the court may consider the text of Ordinance 2315 and the "Proposed Agreement"in connection with the motion to dismiss.

The minutes of the City Council meetings are another matter.  Although the complaint refers to meetings of the Vestavia Hills City Council, it no where refers explicitly to the minutes of those meetings, and, unlike the ordinance and the "Proposed Agreement," both of which plaintiff either possessed or had access to, plaintiff had no ready access to the minutes produced after the meetings were concluded.  There is no reason to assume that plaintiff can readily assess the accuracy and completeness of the minutes in the same way it can the "Proposed Agreement" (of which it has a copy) and Ordinance 2315.

As to the license application, plaintiff appears to contest the accuracy or completeness of the document, saying that, standing by itself, the document does not reveal the complete facts.  In particular, plaintiff seems to challenge the indication on the document that Mayor Zaragoza and City Clerk Leavings approved the application. Plaintiff has alleged the opposite, that they did not approve the application, and that is why it went before the City Council.  Because plaintiff disputes the exhibit's accuracy, it must be disregarded at this stage.

Consequently, the plaintiff's motion to strike will be GRANTED IN PART AND DENIED IN PART.  The court will strike the affidavit testimony of defendant Leavings and the attached minutes of the Vestavia Hills City Council and the license application, but will deny the motion to

strike the copy of Ordinance 2315 and the "Proposed Agreement" between JHM, the plaintiff, and the City.  In addition, the plaintiff's motion for leave to file a reply (doc. 21) is GRANTED to the extent that the reply attached thereto as Exhibit 1 is deemed filed.  The motion to amend (doc. 22) also is GRANTED to the extent that the amended response attached thereto as Exhibit 1 is deemed filed.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Rule 12(b)(6), the court views the complaint in the light most favorable to the non-moving party.  Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).  The court assumes the well-pleaded factual allegations in the complaint to be true and gives the plaintiff the benefit of all reasonable factual inferences from those facts. Hazewood v. Foundation Financial Group, LLC, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam). The complaint must only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quoting In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981).

At the same time, though, the Supreme Court has explained:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of

his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (brackets in original) (footnote omitted).  In essence, then, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

Although the same standards apply when analyzing a standing question, a court may also require the plaintiff to come forward with additional factual matter to support an assertion of standing.

For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.  E.g., Jenkins v. McKeithen, 395 U.S. 411, 421-422, 89 S. Ct. 1843, 1848-1849, 23 L. Ed. 2d 404 (1969).  At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.  If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

7

Warth v. Seldin, 422 U.S. 490, 501-02, 95 S. Ct. 2197, 2206-07, 45 L. Ed. 2d 343 (1975); see also Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 109, 99 S. Ct. 1601, 1613, 60 L. Ed. 2d 66 (1979).  Taking the factual allegations of the complaint as true, therefore, the following appear to be facts relevant to the motion and question of standing.

## FACTS

Plaintiff Vestavia Plaza, LLC., owns a shopping center located within the city limits of defendant City of Vestavia Hills.  During the fall of 2010, plaintiff began negotiating to lease space to the Downtown Jimmie Hale Mission, Inc., ("JHM") to operate a retail thrift store at plaintiff's shopping center located at 513 Montgomery Highway, Vestavia Hills, Alabama (the "Location"). On or about October 20, 2010, JHM applied for a business license with the City to operate the business.  Subsequently, on or about October 28, 2010, Vestavia Plaza entered into a 40-month lease agreement with JHM for the Location.  Under the lease agreement, JHM agreed to pay Vestavia Plaza a total of $513,432 in rent over 40 months, plus a share of taxes, insurance premiums, and common area expenses.  The agreement contained an option to add three additional years to the term, with the original term to begin on December 1, 2010.

At the time Vestavia Plaza and JHM executed the lease agreement, JHM had applied for the business license, and the application was pending.  After executing the lease, JHM inquired with the City about the status of the business license application.  According to Vestavia Plaza's Complaint, Mayor Zaragoza told JHM  that the business license application was denied because, as a charitable

organization, JHM would not be obligated to pay city sales taxes. However, no written denial was provided.

Thereafter, representatives from JHM and Vestavia Plaza met with Mayor Zaragoza, City Council President Mary Lee Price, and City Attorney Patrick H. Boone to discuss the business license application. As a result of that discussion, City Attorney Patrick H. Boone drafted a "Proposed Agreement" that resolved the sales tax issue. The Proposed Agreement was approved by JHM, plaintiff, and Mayor Zaragoza.

JHM then submitted the business license application and the Proposed Agreement to the City Council. On January 24, 2011, the City Council met and denied JHM's business license application and the Proposed Agreement. At the City Council meeting, city council members Pierce, Ammons, and Sharp voted to deny the business license application and the "Proposed Agreement." Because the license was denied, JHM terminated the lease with Vestavia Plaza and found retail space in another location outside Vestavia Hills. Prior to the attempt to lease the rental space at plaintiff's shopping center to JHM, it had been unoccupied for three and a half years (except for a six- month period), and when the complaint was filed, it remained unoccupied.

The defendant City has a business license code, enacted as Ordinance 2315. (Doc. 1, pp. 3-6). It is a comprehensive licensing scheme that makes it illegal to operate a business in Vestavia Hill without a license, imposes a tax upon the issuance of a license, and provides for procedures for obtaining the license and challenging the denial of a license. (Doc 5-2). Section 4 of the Ordinance makes the business license location specific; that is, a separate business license is required for each

9

physical location at which business is conducted.  Section 18 of the Ordinance establishes procedures in the event a business-license application is denied.  It states:

### SECTION 18. Procedure for denial of new applications.

(a) The municipal designee shall have the authority to investigate all applications and may refer any application to the municipal governing body for a determination of whether such license should or should not be issued.

(b) If the municipal governing body denies the issuance of any license referred to it, the municipal clerk shall promptly notify the applicant of the municipal governing body's decision.

(c)  If said applicant desires to appear before the municipal governing body to show cause why said license should be issued, he shall file a written notice with the municipal clerk, said notice to be filed within two (2) weeks from the date of mailing by the municipal clerk of the notice of the denial of such license by the municipal governing body.

(d) Upon receipt of said notice the municipal clerk shall promptly schedule a hearing, to be held within fifteen (15) days from the date of receipt of such notice,  before the municipal governing  body and shall give the notice of the date, time and place of said hearing to the applicant.

(e) The applicant  shall be given the opportunity to appear personally, or through his counsel, or both, and the municipal governing body  shall proceed to hear any evidence which may be presented both for and against the issuance of said license.

(f) If the municipal governing body determines from the evidence presented that in order to either provide  for the safety, preserve the health, promote the prosperity, or improve the morals, order, comfort  and convenience of the inhabitants of the municipality said license  should not be granted, it shall enter an order to that effect; otherwise,  said license shall be ordered issued upon payment of any required  license fees.

\

**DISCUSSION**

The plaintiff seeks damages and injunctive relief prohibiting the City from enforcing Ordinance 2315 and interfering with plaintiff's "property, liberty, association, equal protection, and due process rights," as well as a declaratory judgment that the ordinance is null and void. Defendants' motion to dismiss raises eleven arguments (not counting sub-parts), ranging from various forms of immunity to lack of standing to insufficiency of factual allegations. The court will first address the issue of standing to determine whether Vestavia Plaza can properly pursue the asserted claims because this ground raises a challenge to the court's subject matter jurisdiction.

**A. Standing to Assert Claims Pursuant to § 1983**

Plaintiff asserts several claims arising under 42 U.S.C. § 1983, seeking relief based upon allegations of the denial of its rights of substantive due process, procedural due process, equal protection, and free association, and asserting that the City caused plaintiff to suffer an unconstitutional taking without compensation. The defendants argue that the plaintiff lacks standing to assert these claims. This assertion, although offered as one of many grounds to support a motion to dismiss, must be examined before any discussion of the merits of any claim, or even whether the claim is sufficiently pleaded. Standing is a "threshold jurisdictional question which must be addressed prior to and independent of the merits" of any plaintiff's claim. Swann v. Secretary, State of Georgia, 668 F.3d 1285, 1288 (11th Cir. 2012)(citations omitted).

The Supreme Court has described standing as the "irreducible constitutional minimum" required in any analysis of Article III's "case-or-controversy requirement." Swann, 668 at 1288,

11

quoting <u>Kelly v. Harris</u>, 331 F.3d 817, 819 (11th Cir. 2003).  Standing is an issue that brings up related questions of ripeness and mootness, and the constitutional admonition that not every dispute creates a justiciable "case or controversy."  <u>Warth v. Seldin</u>, 422 U.S. 490, 499 n.10, 95 S. Ct. 2187, 45 L. Ed. 2d 343 (1975).  Absent standing, a party is not entitled to obtain the court's advisory opinions about its claims, and the court is "powerless to continue."  <u>Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla.</u>, 641 F.3d 1259, 1265 (11ᵗʰ Cir. 2001).   To allow the court to decide a dispute absent a careful examination of standing would upset the "proper – and properly limited – role of the courts in a democratic society."  <u>Warth v. Seldin</u>, 422 U.S. at 498.   The purpose of the standing examination is to "ensure that the parties before the court have a concrete interest in the outcome of the proceedings such that they can be expected to frame the issues properly."  <u>Harris v. Evans</u>, 20 F.3d 1118, 1121 (11th Cir. 1994).

### 1.  Constitutional Standing

The Supreme Court has designed a framework for resolving standing issues which involves both "constitutional" and "prudential" requirements.  <u>Harris</u>, 20 F.3d at 1121, citing <u>Warth</u>, 422 U.S. at 498–99, 95 S. Ct. at 2205; <u>Saladin v. City of Milledgeville</u>, 812 F.2d 687, 690 (11ᵗʰ Cir. 1987).  To meet the "irreducible minimum" requirements of Article III constitutional standing, a plaintiff must demonstrate: (1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling.  <u>Harris</u>, 20 F.3d at 1121, citing <u>Warth</u>, 422 U.S. at 498-99.  Beyond the constitutional requirements of standing, there are judicially developed prudential standing

considerations, which are intended to self-restrain the courts to a properly limited role in a democratic society.

In the instant case, the parties do not dispute that the plaintiff has suffered an injury – a loss of rent from JHM – and that the loss of that rent income is fairly traceable to the defendants' denial of  JHM's business license.   Also, the injury to Vestavia Plaza is "likely to be redressed by a favorable ruling," particularly an award of compensatory damages.  Although it can be argued that any claim for injunctive relief may be moot as it is not disputed that JHM has opened its store in another location and is no longer interested in renting the Vestavia Plaza location, an award of compensatory damages for lost profits from the canceled lease remains a potential remedy, giving plaintiff the bare constitutional minimum for "case or controversy" standing.

2.  Prudential Standing

The three elements that satisfy the constitutional standing requirements are accompanied by three other "principles of judicial restraint" known as prudential standing considerations.  Harris, 20 F.3d at 1121; see, e.g., Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla., 351 F.3d 1112, 1116 (11th Cir. 2003).   One of the essential criteria of prudential standing generally requires a litigant to assert his or her own legal claims rather than claims based upon the rights of a third-party not before the court. See, e.g.,  Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc., 280 F.3d 278, 288-89 (3d Cir. 2002).[2]  The Eleventh Circuit Court of Appeals has

_____

[2]      As a consequence, only those claims based upon the deprivation of the third party's constitutional rights provide standing. Such a concept comports with the general spirit of the third-party standing doctrine. The animating principle is that third-party standing allows a party to litigate

described prudential standing as a doctrine essential to preserving the American system of government:

> In addition to these constitutional requirements, the court has fashioned three principles of judicial restraint, which have come to be known as "prudential" considerations. These self-imposed constraints are intended to ensure the proper role of the courts in our tripartite system of government by avoiding judicial resolution of abstract questions that would be more appropriately addressed by other governmental institutions. <u>Warth</u>, 422 U.S. at 500, 95 S. Ct. at 2205–06. We have summarized the three prudential considerations as follows:
>
>> 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) *whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.*

<u>Harris</u>, 20 F.3 at 1121 (quoting <u>Saladin</u>, 812 F.2d at 690)(Italics added). In <u>Harris</u>, a prison inmate challenged a Department of Corrections policy that prohibited prison guards from writing letters to the parole board recommending a favorable decision for individual prisoners. The inmate sought, essentially, to litigate the prison guards' First Amendment rights allegedly infringed by the policy. The appellate court dismissed the action on the ground that the inmate did not have standing to raise such claims. <u>Harris</u>, 20 F.3d at 1124-25.

Generally, a litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>United States Department of Labor v.</u>

_____

issues on *behalf* of a third party not currently before the court, based upon injuries to that third party's rights, not the rights of the litigating party.

Triplett, 494 U.S. 715, 720, 110 S. Ct. 1428, 108 L. Ed. 2d 701 (1990) (citation and quotation marks omitted).  Even though the alleged illegal act affects the litigant as much as it affects the third party, the requirement that the litigant invoke his *own* rights remains.  494 U.S. at 720.   However, when "enforcement of a restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship), to which the third party has a legal entitlement (typically a constitutional entitlement), third-party standing has been held to exist." Triplett, 494 U.S. at 720.  In Triplett, the court made clear that the "restriction" must be *against the litigant* in order for third-party standing to exist.  In this case, however, the restriction (i.e., the denial of the license application) was against the third-party (JHM) and *not* against the litigant (Vestavia Plaza). Other cases illustrate this prudential standing concept.

For example, in Craig v. Boren, 429 U.S. 190, 192, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976), an Oklahoma statute prohibited the sale of 3.2% beer to males under the age of 21 and to females under the age of 18.  A bar owner sued, arguing that the law was an unconstitutional denial of equal protection for males 18 to 20 years of age.  The Supreme Court examined whether the bar owner had prudential standing to assert the rights of male bar patrons that were affected by the statute.  The Supreme Court explained:  "The legal duties created by the statutory sections under challenge are addressed directly to vendors such as appellant.  She is obliged either to heed the statutory discrimination, thereby incurring a direct economic injury through the constriction of her buyers' market, or to disobey the statutory command and suffer, in the words of Oklahoma's Assistant Attorney General, "'sanctions and perhaps loss of license.'"  Craig v. Boren, 429 U.S. at 194. "Accordingly, vendors and those in like positions have been uniformly permitted to resist efforts at

restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." Craig v. Boren, 429 U.S. at 195. Thus, in Craig, as in Triplett, the restriction was imposed against the litigant (i.e., the bar owner). See also Griswold v. Connecticut, 381 U.S. 479, 481, 85 S. Ct. 1678, 1679-80, 14 L. Ed. 2d 510 (1965) (finding prudential standing because the litigant would be subject to criminal conviction for "violation of an aiding-and-abetting statute."); Eisenstadt v. Baird, 405 U.S. 438, 446, 92 S. Ct. 1029, 1034-35, 31 L. Ed. 2d 349 (1972) (finding prudential standing because the law prohibited distribution of contraceptives by the litigant); Cf. Haitian Refugee Ctr. v. Gracey, 809 F.2d 794, 809 (D.C. Cir. 1987) (stating that "[a] litigant therefore could never have standing to challenge a statute *solely* on the ground that it failed to provide due process to third parties not before the court.") (emphasis added).

In this case, the plaintiff has argued in its response to the motion to dismiss that it has third-party standing based upon the holding of Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1044 (11th Cir. 2008). That case, however, concerned an ordinance enforced against the litigant and not against the third-party. The Eleventh Circuit Court of Appeals noted that the overcrowding ordinance at issue in Young Apartments was "enforc[ed] against properties that housed Hispanic immigrant tenants," and not against the Hispanic tenants themselves. Young Apartments, 529 F.3d at 1037. Young Apartments is distinguishable from the instant case because the ordinance at issue applied to the litigant-landlord and not the third-party tenants. The ordinance at issue in the instant case – which empowered the City to deny or grant business licenses -- was applied to the third-party tenant and not the litigant-landlord.

It should be noted that prudential standing may exist in certain instances, even where the litigant is not the party directly affected.  In Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary, 268 U.S. 510 (1925), the Supreme Court found prudential standing even though the restriction applied to the third-party (parents of minor children) and not directly against the litigant (private schools).  Pierce concerned an Oregon statute which required parents to send their children between 8 and 16 years old to public school. Pierce, 268 U.S. at 530. Consequently, children between 8 and 16 were prohibited from attending private schools. Pierce, 268 U.S. at 531. The Supreme Court first identified the constitutional right at stake, saying, "we think it entirely plain that the Act of 1922 unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children."  Although the court described the property of the private-school litigants at stake, it did not identify any constitutional right belonging to the litigants.  The Court explained, "Generally, it is entirely true, as urged by counsel, that no person in any business has such an interest in possible customers as to enable him to restrain exercise of proper power of the state upon the ground that he will be deprived of patronage."  Pierce, 268 U.S. at 535-36.  The Court continued: "But the injunctions here sought are not against the exercise of any proper power. Appellees asked protection against arbitrary, unreasonable, and unlawful interference with their patrons and the consequent destruction of their business and property. Their interest is clear and immediate." Pierce, 268 U.S. at 536.

Consequently, the Court concluded that the suit could proceed even though the Oregon law did not directly affect the litigant (i.e., the private school).  One commentator has argued that the Court's reasoning appears to have been that "The law challenged in Pierce placed a legal duty on third

17

parties [the parents of school children] that directly infringed [the parents'] constitutional rights. The ability to exercise those rights, however, depended not only on freedom from the restrictions imposed by the statute but on the existence of private schools as well." Standing to Assert Constitutional Jus Tertii, 88 Harv. L. Rev. 423, 433-36 (1974). The existence of the private schools was vital because:

> [i]f the lack of students forced schools to close, even parents willing to flout their statutory duty would be unable to send their children to private school, and a successful challenge would not immediately reopen all private schools. Thus in *Pierce* the out-of-court relationship between the claimant and the rightholders linked the claimant's injury to the dilution of the third parties' constitutional rights [i.e., parents' ability to assert substantive due process violations]. In order to prevent such dilution, it was essential that the claimant be allowed to assert jus tertii.

Id. (Footnote omitted). In sum, the private schools had standing because the parents' rights would be adversely affected by the law's indirect effect on the private schools. If all private schools were closed as a result of the statute mandating attendance in public schools, the ability of *parents* to challenge the infringement of *their* rights under the statute would be diluted by the absence of private school alternatives. In other words, the key was not that the law had an adverse effect on private schools, but that its effect would be to limit the ability of parents to exercise *their* fundamental parental rights. See id. ("Only when the claimant alleges that his own injury deprives third parties of their constitutional rights is it necessary to entertain a claim of *jus tertii* in order to prevent dilution of the rights of third parties.").

As such, when a restriction or ordinance applies to a third-party, the litigant may assert a claim on behalf of the third party only when the restriction affects the litigant in such a way that the

third-party's rights are adversely affected.[3]   Accordingly, the analysis for third-party standing in the context of a regulation being directed at the third-party and not the litigant is as follows: (1) a law, ordinance, or regulation directed at a third-party, (2) the law, ordinance, or regulation injures the litigant, and (3) the injury to the litigant adversely affects a constitutional right of the third-party.

An example of this reasoning can be seen in Beauty Hall, Inc. v. State Bd. of Cosmetology, 210 A. 2d 495 (Pa. 1965).  In Beauty Hall, the Pennsylvania Supreme Court examined a statute that required all individuals taking the state cosmetology examination to have completed the 10th grade. Beauty Hall, 210 A. 2d at 497.  Beauty Hall, Inc., a cosmetology school, argued that the new regulation decreased the number of applicants to its school because "some persons who would have become tuition paying students in its school in the absence of the new educational requirement will not become its students in the presence of such a requirement."  Beauty Hall, 210 A. 2d at 497. Beauty Hall claimed financial damages from the decreased student enrollment.  The Pennsylvania Supreme Court concluded that Beauty Hall, Inc., did not have standing. The court began by stating that in most third-party standing claims, "the attack upon the constitutionality of the regulation was made by the person who was directly regulated or burdened or prevented from free pursuit of his chosen occupation.  In none of [the cases cited by Beauty Hall, Inc.] was the attack made by one who

---

[3]      The following example is illustrative: "As in dutyholder-claimant cases, not all assertions of a link between the claimant's injury and the rightholders' deprivations will prevail on the merits. Suppose that a statute like that in *Pierce* applied only to recent immigrants. Private schools would still suffer injury, but since they would retain most of their students, they would probably not be forced to close. If parents then wished to exercise their rights by disobeying the law, or if they succeeded in challenging it, private schools would still be available. Although the statute would violate the rights of immigrant parents, the injury to the schools would in itself not adversely affect the rights of the third parties, and a *jus tertii* claim advanced by the schools would not succeed." Standing to Assert Constitutional Jus Tertii, 88 Harv. L. Rev. 423, 433-36 (1974).

was only indirectly economically affected by the direct regulatory impact upon others."   Beauty

Hall, 210 A. 2d at 499.   The Court continued, "The import of these cases is that an adverse,

economic impact which is merely an indirect, remote, and nonpurposeful consequence or merely a

side effect of the direct, governmental regulation of or imposition of burdens upon other persons

does not constitute a deprivation of or interference with property within the meaning of the

constitutional provisions asserted by [Beauty Hall, Inc.] and does not provide standing to attack the

constitutionality of that regulation."   Beauty Hall, 210 A. 2d at 498.

In this case, Vestavia Plaza may have been injured by its loss of JHM as a tenant, but action

taken by the defendants was not aimed at Vestavia Plaza's rights or interests.   JHM was the object

of the action taken, and the impact of that action on plaintiff was an "indirect, remote, and

nonpurposeful consequence or merely a side effect of the direct, governmental regulation" imposed

on JHM.

The Eleventh Circuit Court of Appeals succinctly described prudential standing in Harris,

when finding that a prison inmate did not have standing to raise the free speech claims of prison

guards:

> We find that Harris lacks standing in this case under the general principle that a
> litigant must assert his own legal rights and interests and may not ordinarily rely on
> the rights and interests of third parties. The prohibition against third-party standing
> promotes the fundamental purpose of the standing requirement by ensuring that the
> courts hear only concrete disputes between interested litigants who will frame the
> issues properly. *See Schlesinger v. Reservists Committee to Stop the War*, 418 U.S.
> 208, 220–21, 94 S. Ct. 2925, 2932, 41 L. Ed. 2d 706 (1974).

Harris, 20 F.3d at 1121.   The court further explained:

> We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: the litigant must have suffered an "injury-in-fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

Harris, 20 F.3d at 1122.  Although Vestavia Plaza may arguably meet the first two criteria — injury in fact and a close relation to the third party — there is no showing that JHM faces any hindrance to its own efforts to vindicate its own rights.  It has been recognized that standing is not to be handed out cavalierly, because third parties are usually the "best proponents of their own rights, and because "it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful."  Harris, 20 F.3d at 1123 n.7, quoting Singleton v. Wulff, 428 U.S. 106, 113-14, 96 S. Ct. 2828, 49 L. Ed. 2d 826 (1976).[4]  In the instant case, JHM would be the best proponent of its own right.  JHM either does not wish to assert that right, or has been able to enjoy the right to operate its business regardless of Vestavia Plaza's lawsuit.  Even assuming the facts alleged in the complaint to be true, that the defendants arbitrarily and capriciously denied JHM a business license, which caused Vestavia Plaza to lose a potential tenant for its retail space, there is no indication that JHM is unable to vindicate its own rights with respect to the business license it sought.

---

[4]     Insofar as the complaint seeks declaratory or injunctive relief, it is now moot.  Plaintiff cannot demonstrate any entitlement to declaratory or injunctive relief because it concedes that JHM is no longer interested in leasing the property. Any declaratory or prospective relief with respect to a business license for JHM would fail to remedy Vestavia Plaza's injury because JHM is no longer interested in leasing the plaintiff's property.

Does this denial of a business license, even if violative of JHM's constitutional rights (which the court has no occasion to determine), give Vestavia Plaza standing to raise JHM's claims relating to the denial of a business license?  If so, every landlord could raise a potential tenant's claims when a city or state puts limits on what uses comply with zoning or licensing regulations:  the  owner of a house who wants to rent to multiple families in violation of a zoning ordinance, the owner of a retail space whose tenant fails to get a liquor license, the owner of an office building whose tenant wants to erect flashing neon signs.   The appropriate parties to actions that challenge the constitutional propriety of such regulations are the parties against whom they are enforced — the tenants whose occupancy raises questions.

At one point in its brief in opposition to the motion to dismiss, Vestavia Plaza seems to make the alternative argument that is not seeking to enforce JHM's rights through third-party standing, but claims that it is simply seeking to remedy its own injury.  (Doc. 12, pp. 17-18).  Plaintiff argues:

> Defendants fail to recognize that Vestavia Plaza is primarily asserting standing based **on its own injury**, not the injury of Jimmie Hale Mission. (See, e.g., Doc. 1 ¶ 23 ("As a result of Defendants conduct, Vestavia Plaza lost its contract with JHM.  In addition, Vestavia Plaza has been forced to attempt to market and lease the Property again, but has been unsuccessful.").  "As the Eight Circuit has explained, "plaintiffs have standing to challenge the constitutionality of a law that has a direct negative effect on their 'borrowing power, financial strength, and fiscal planning,'" Jones v. Gale, 470 F.3d 1261, 1267 (8th Cir. 2006) (quoting Clinton v. City of New York, 524 U.S. 417, 431 (1998)).  In this case, the standardless government discretion claimed by Defendants through their ordinance has a direct negative impact on Vestavia Plaza's reasonable investment-backed expectations in the use and value of its property.  The lost rental income, lost value and future uncertainty created by Defendants' arbitrary treatment of potential tenants is significant, real, and direct.

But this argument also is unavailing in establishing standing for Vestavia Plaza.  Plaintiff concedes that the legal event that cause injury was the denial of *JHM's* application for a business license.  The factual allegations of the complaint make very that plaintiff alleges that it was the arbitrary and capricious denial of *JHM's* application for a business license that caused JHM to withdraw from the lease with plaintiff.  Time and time again, in each of Counts Two through Six of the complaint, plaintiff alleges that the legal wrong was the defendants' "arbitrarily and capriciously making the decision to deny a business license to JHM...."  See Complaint ¶¶ 30, 34, 38, 42, and 46. The allegation in Counts Eight[5] is worded only slightly differently.[6]  Count Seven alleges that "Vestavia Hills Ordinance Number 2315 is unconstitutionally vague, unintelligible, and overbroad and fails to put *applicants* on notice of what is required to satisfy the law *and obtain a business license*."  (Italics added).  Each operative allegation makes clear that the unconstitutional act of the defendants related directly to the administration of the business license ordinance and its application to JHM.  Plaintiff makes no attempt to assert that *it* was ever denied any legal right or procedure. Plaintiff was not an "applicant" for a business license.  It was neither denied a license nor any hearings or procedures necessary to secure one.  While plaintiff suffered an indirect economic injury when JHM withdrew from the lease after being denied a business license, the only federal constitutional rights or interests allegedly injured were those of JHM, not plaintiff.  According to the

---

[5]     In Count Eight, plaintiff alleges that "[o]ne or more of the defendants did, or caused to be done, an act in furtherance of the conspiracy by *making the decision to deny the business license* or acting in a way that furthered that result."  (Italics added).

[6]     Counts One, Nine, and Ten allege state-law claims irrelevant to determining whether plaintiff can establish federal standing to assert its action in this court.

complaint JHM was denied substantive and procedural due process, JHM was denied equal protection.  Although plaintiff argues it was denied the valuable property of its rights in the lease with JHM, this was only the indirect, collateral consequence of defendants' actions taken to deny JHM a business license.

In this case, JHM is the party aggrieved in the legal standing sense of the word.  JHM attempted to operate a thrift store, and the defendants denied it a business license that would allow it to do so.  JHM could have challenged that decision, and could have chosen to pursue remedies in court, but chose not to.  Instead, according to plaintiff's complaint, JHM "proceeded to find suitable retail space in a more welcoming municipality."  (Doc. 1, ¶ 21).  Vestavia Plaza has made no showing at all that JHM was hindered in any way from protecting its own interests.  The plaintiff's argument (doc. 12, p. 26) that JHM was "hindered" because of the defendants' "hostility" and  "the availability of a neighboring city" or the "cost involved" in litigation is simply insufficient.  Neither the alleged "hostility" of Vestavia Hills nor the availability of a more welcoming city prevented JHM from seeking to vindicate its rights.  Insofar as the costs of litigation are prohibitive, this shows nothing more than the rational calculations any potential litigant weighs in deciding *whether* to vindicate his rights, not the practicability of it.

Accordingly, the plaintiff has no standing to assert any challenges to the defendants' denial of a business license application by JHM.  Because Claims 2-8 of the complaint specifically seek to enforce JHM's constitutional rights to due process and equal protection, the defendants' motion to dismiss as to each of these claims is due to be granted and the claims are due to be dismissed as without subject-matter jurisdiction.

### B.  State Law Claims

Plaintiff's remaining claims, set forth as Claims 1, 9 and 10, allege only violations of Alabama state law.  Plaintiff is an Alabama limited liability company, and the defendants are Alabama citizens and an Alabama municipality.  Accordingly, diversity jurisdiction does not exist. Thus, there is no basis for original federal jurisdiction over the plaintiff's state-law claims, which were brought in addition to the claims arising under federal law that were discussed *supra*.  While the state-law claims appear to have been properly before the court under supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a); the court is now dismissing all federal claims.  Pursuant to 28 U.S.C. § 1367(c), the court has discretion to decline to exercise supplemental jurisdiction over the state-law claims once the federal claims are dismissed.  In this case, the plaintiff's state-law claims depend upon interpretations of state law and the state constitution.  These claims are best resolved by the state courts, especially when the federal claims are dismissed early in the course of the litigation.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) (dismissal of state law claims strongly encouraged when federal law claims are dismissed prior to trial); Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 619 n. 7, 98 L. Ed. 2d 720 (1988) ("When federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").  In this case, judicial economy, fairness, convenience, and comity compel this court to decline jurisdiction over the state-law claims. Accordingly, the state-law claims are due to be dismissed without prejudice.

## **CONCLUSION**

The motion to dismiss as to Counts Two through Eight is due to be and hereby is GRANTED, and those claims are due to be DISMISSED as wanting federal jurisdiction. The court declines to exercise jurisdiction over the remaining state-law claims, and therefore Counts One, Nine, and Ten are due to be DISMISSED WITHOUT PREJUDICE.   A separate order will be entered.

Dated the 4th day of June, 2012.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE