FILED
2013 Sep-09  PM 04:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VESTAVIA PLAZA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Case No. 2:11-cv-4152-TMP |
| CITY OF VESTAVIA HILLS, | ) | |
| ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

This cause is before the court on the defendants' motion to dismiss (Doc. 36) the plaintiff's amended complaint filed January 23, 2103 (Doc. 35).[1]  Named as defendants in the amended complaint are the City of Vestavia Hills, Alabama, ("the City"); City Council members George Pierce, Steve Ammons, and Jim Sharp, sued individually; Mayor Alberto "Butch" Zaragoza, sued individually; and City Clerk  Rebecca Leavings, sued individually.  The amended complaint sets forth twelve claims for relief against the various defendants arising from plaintiff's attempt to lease its building in Vestavia Hills to The Jimmie Hale Mission ("the Mission") for use as a "thrift store."  According to the amended complaint, the City denied the

---

[1]   The defendants' argue that the Amended Complaint should be dismissed as untimely filed is meritless.  Although the Amended Complaint was filed thirteen days after the court's order allowing ten days to file it, Rule 6(d) of the Fed. R. Civ. P. provides that "When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)."  Thus, even though the order required the amendment to be filed in ten days, that order was served under Rule 5(B)(2)(E), so that three additional days were allowed.  In any event, the court would extend the time for filing by three days for excusable neglect under Rule 6(b)(1)(B).  The Amended Complaint was timely filed.

Mission a business license, causing the Mission to open its store in another location and causing plaintiff to lose the benefits of its lease with the Mission.

## I.  Standards of Review

### A.  *Extrinsic Matters in Support of the Motion*

The defendants' motion to dismiss immediately places before the court the procedural question whether it must be converted into a Rule 56 motion because defendants have supported the motion with (1) minutes from the January 24, 2011, meeting of the City Council of Vestavia Hills; (2) a copy of the proposed Resolution 4149 and the accompanying agreement proposed between plaintiff, the City, and the Mission; (3) a copy of the Mission's application for a business license; and (4) a copy of Vestavia Hills' Business License Code, Ordinance 2315. Ordinarily, Rule 12(d) requires that, if matters outside the pleadings are presented in support of a Rule 12(b)(6) or 12(c) motion, the motion must be converted to a motion for summary judgment under Rule 56, unless the court excludes the extrinsic matter.  Even so, the Eleventh Circuit has recognized that certain types of extrinsic matters may be considered and not excluded without requiring conversion of the motion.  For example, when the "plaintiff refers to a document in its complaint, the document is central to its claim, [and] its contents are not in dispute" the defendant may annex the referenced document to its motion to dismiss without causing conversion of the motion.  See  Financial Security Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007); Halmos v. Bomardier Aerospace Corp., 404 Fed. Appx. 376, 377 (Dec. 7, 2010) (on reviewing a Rule 12(b)(6) motion to dismiss, the court may consider documents incorporated into the complaint by reference).

Under this authority, the court has previously accepted for consideration in connection with an earlier motion to dismiss a copy of the Business License Code, Ordinance 2315, as well as the "Proposed Agreement" annexed to proposed ordinance 4149.  The court excluded and rejected consideration of an affidavit by defendant Leavings.  The court also previously excluded the business license application filed by the Mission (Exh. C).  This document is referred to in the amended complaint and it is central to the plaintiff's claims, but plaintiff disputes the accuracy of the exhibit offered by the defendants, and particularly its apparent indication that Mayor Zaragoza "approved" the application.  This conflicts with the amended complaint's factual allegation that the application was denied by the mayor and City Clerk Leavings.  Again, because the contents of the business license application offered by the defendants are disputed by the plaintiff, the court must exclude and disregard it in consideration of the instant motion to dismiss.

In real dispute is whether the court may consider the minutes of the January 24, 2011, meeting of the City Council of Vestavia Hills.  The court previously excluded the minutes when considering the earlier motion to dismiss, but defendants argue that it was error for the court to do so, and they have are argued that "public documents," such as the publicly-available minutes of a city council can be considered without converting a Rule 12(b)(6) motion into a summary judgment motion.

Based on the unpublished Eleventh Circuit case of <u>Universal Express, Inc. v. U.S. Securites and Exchange Commission</u>, 177 F. App'x 52 (11th Cir. 2006), the court agrees that the minutes of the City Council of Vestavia Hills are "public documents," of which the court may take judicial notice, but only for the fact that the minutes exist and that certain statements are included in the minutes, not for the *truth* of those statements.  In <u>Universal Express</u>, the court of

appeals dealt with the question whether a civil complaint filed in another court can be judicially noticed in connection with a Rule 12(b)(6) motion without having to convert the motion under Rule 12(d).  The court of appeals reasoned:

> A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).  Public records are among the permissible facts that a district court may consider. *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."); *cf. Bryant*, 187 F.3d at 1278 (11th Cir. 1999) (holding that "a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice ... of relevant public documents required to be filed with the SEC").  Because the complaint filed in the Southern District of New York is a public document, the district court was not obliged to convert the motion to dismiss to one for summary judgment or comply with the notice requirements of Rule 56(c).

Id. at 53-54; see also Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010)(in malicious prosecution suit, court may take notice of complaint filed in another court as a "public record").[2]  Courts have taken judicial notice of real estate documents recorded under state recordation laws  See McFarland v. BAC Home Loans Servicing, LP, 2012 WL 2205566 (N.D. Ga., June 14, 2012) (court took notice a "Security Deed" recorded under state law without converting a motion to dismiss into a motion for summary judgment).  The express reliance on Bryant v. Avado Services, however, limits the use such noticed documents can have.  The court in Bryant held that "a court . . . may take judicial notice (for the purpose of determining what statements the documents contain and *not to prove the truth of the documents' contents*). . . ."  Id. at 1278 (italics added); see also Davis v. Williams Communications, Inc., 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir.2001) (stating that

---

[2]   The case of Cash Inn of Dade, Inc. v. Metro. Dade County, 938 F.2d 1239, 1243 (11th Cir. 1991), does not assist the analysis here because the city council minutes involved there were already part of the court's records from an earlier hearing.

courts may take judicial notice of undisputed matters of public record but may not take judicial notice of disputed facts stated in public records).  While the court may take judicial notice of the minutes for what they say and do not say, it may not simply notice the *truthfulness* of statements that are disputed by the plaintiff.  Whether a particular statement recorded in the minutes of the city council is *true* remains a disputed fact.  With that understanding of the limited nature of the judicial notice the court may give, the minutes of the Vestavia Hills City Council will be considered in support of the motion to dismiss without converting the motion to one for summary judgment.

B.  *Standard of Review Applicable to a Rule 12(b)(6) Motion*

Under the Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1965 (2007) (rejecting the standard from <u>Conley v. Gipson</u>, 355 U.S. 41, 78 S. Ct. 99, 2. L. Ed. 2d 80 (1957), that any "conceivable" set of facts supporting relief is sufficient to withstand a motion to dismiss), the complaint must allege facts, not mere legal conclusions, that show a plausible basis of relief against the defendants.   The threshold of plausibility is met where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).   The Supreme Court has explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid*.; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do, *see Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, **Federal Practice and Procedure** § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

## II.  Facts Alleged in the Amended Complaint

Applying the Twombly/Iqbal standard, the court must first identify the *factual* allegations in the amended complaint and, assuming them to be true, determine whether those allegations "plausibly" state a cause of action against a proper defendant.  To be "plausible" the allegations must nudge the claim beyond the speculative level.

The amended complaint alleges the following facts.  In October 2010, plaintiff and the Mission entered into a lease under which the Mission agreed to lease from plaintiff a retail store location in plaintiff's shopping center on Montgomery Highway in Vestavia Hills, Alabama.  Even before the lease was signed,[3] the Mission applied to the City for a business license to operate a thrift store.  On an undisclosed date, the Mission inquired about the status of its license application and was told by Mayor Zaragoza that the application had been denied because "as a

---

[3]  The amended complaint alleges that the Mission filed its application for a business license on October 20, but did not enter into the lease with plaintiff until October 28, 2010.

charitable organization, [it] would not be obligated to pay City sales taxes."  The Mission was not provided with a written notice of denial.[4]  Plaintiff and the Mission met with Mayor Zaragoza, City Council President Mary Rice, and City Attorney Patrick Boone to discuss the problems with the business license application.  As a result of these discussion, "the City Attorney drafted a proposed agreement (the "Proposed Agreement"), after consultation with Mayor Zaragoza and the City Council President, that addressed the City's tax revenue concerns.  The Proposed Agreement was reviewed and changes were suggested, and the agreement was eventually approved by" plaintiff, the Mission, Mayor Zaragoza, and City Council President Rice.

Thereafter, the "business license and the Proposed Agreement were then submitted for the City Council's approval."  The Council met on January 24, 2011, "and denied the business license to JHM [the Mission] and rejected the Proposed Agreement . . . ."  Voting against the agreement were City Council members Pierce, Sharp, and Ammons.  (City Council President Rice voted for the agreement and is not named as a defendant in this action).  The amended complaint alleges explicitly that the vote of the Council denied *the license,* not just the Proposed Agreement that was a precondition to the license (Amended Compl., Doc. 35, ¶ 22), and that plaintiff and the Mission concluded that "that Defendants were giving [the Missions] and Vestavia Plaza the run-around, as any further efforts to obtain approval would be futile and unproductive."  The minutes of the January 24 meeting offered by the defendants in support of their motion show that a resolution (Resolution 4149) to approve and authorize the mayor to

---

[4]   The amended complaint also alleges that plaintiff and the Mission were informed that [the Mission] was being denied zoning approval because it was a nonprofit institution and the "property was not zoned for institutional use."  Plaintiff agrees, however, that this objection to the Mission was later withdrawn and zoning approval was granted.

enter into the Proposed Agreement was defeated. The minutes do not reflect any action specifically on an application for a business license.

As a result of the City Council's action on January 24, plaintiff and the Mission canceled the lease between them and the Mission later opened its thrift store in a different municipality. Plaintiff alleges that it has lost the rental income and other benefits of its lease with the Mission and it has been unable to lease the space since that time, except for one six-month period.

## III.  Discussion

Based on these facts, the plaintiff's Amended Complaint alleges twelve causes of action, as follows:

Count One – All defendants arbitrarily and capriciously denied plaintiff the right to use its property for an approved zoning use in violation of Alabama state law.

Count Two – All defendants arbitrarily and capriciously deprived plaintiff of its property and liberty interests by denying a use of its property that was an approved zoning use, in violation of 42 U.S.C. § 1983, the Fourteenth Amendment, and the Alabama constitution.

Count Three – All defendants denied plaintiff procedural due process of law by arbitrarily and capriciously denying plaintiff use of its property for an approved zoning use, without providing procedures under which plaintiff could challenge the denial, in violation of 42 U.S.C. § 1983, the Fourteenth Amendment, and the Alabama constitution.

Count Four – All defendants discriminated against plaintiff because it leased to an organization that serves "low income and minority persons," in violation of 42 U.S.C. § 1983, the Fourteenth Amendment, and the Alabama constitution.

Count Five – All defendants deprived plaintiff of its right to associate with others by denying a property use that was an approved zoning use, in violation of  42 U.S.C. § 1983, the First and Fourteenth Amendments, and the Alabama constitution.

Count Six – All defendants took plaintiff's property and its value for public use without just compensation, in violation of 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments, and the Alabama constitution.

Count Seven – All defendants violated plaintiffs rights because Vestavia Hills Ordinance Number 2315 is unconstitutionally vague, unintelligible, and overbroad because it fails to put

landowners and lessors on notice as to what uses of their property are restricted; as to which lessees they can successfully contract with to operate a business; grants standardless discretion to the decision-makers; fails to put applicants on notice of what is required to satisfy the law and obtain a business license; fails to provide any process or procedure for protection of landowners rights; and fails to protect the reasonable investment-backed expectations of lessors contracting with lessees, in violation of 42 U.S.C. § 1983, the Fourteenth Amendment, and the Alabama constitution.

<u>Count Eight</u> – All defendants wrongfully interfered with the contractual and business relationship between plaintiff and the Mission, in violation of Alabama state law.

<u>Count Nine</u> – Defendants Pierce, Ammons, Sharp, Zarazoga, and Leavings conspired to interfere with plaintiff's business relationship with the Mission; to deprive plaintiff of the use of its property; and to interfere with plaintiff's property, liberty, associational, and business rights and interests, in violation of Alabama state law.

<u>Count Ten</u> – Defendants Pierce, Ammons, Sharp, and Zaragoza intentionally and/or knowingly misrepresented the status of the Mission's license application by telling plaintiff and the Mission that the license had been denied when, in fact, it had not been denied; and in reasonable reliance on that representation, plaintiff accepted the Mission's cancelation under the terms of the lease, in violation of Alabama state law.

<u>Count Eleven</u> -- Defendants Pierce, Ammons, Sharp, and Zaragoza negligently and/or innocently misrepresented the status of the Mission's license application by telling plaintiff and the Mission that the license had been denied when, in fact, it had not been denied; and in reasonable reliance on that representation, plaintiff accepted the Mission's cancelation under the terms of the lease, in violation of Alabama state law.

<u>Count Twelve</u> – All defendants deprived plaintiff of equal protection of the laws by arbitrarily and capriciously singling out the plaintiff to deny it the use of its property for an approved zoning use without a legitimate reason, in violation of 42 U.S.C. § 1983, the Fourteenth Amendment, and the Alabama constitution.


In response to these claims, the defendants have raised various defenses, which are addressed below.  The motion to dismiss seems to challenge only the federal-law claims, not making any argument under Alabama state law.

IV.  Federal-Law Claims

Turning to those claims invoking federal law, Counts Two through Seven and Count Twelve, plaintiff's claims ultimately rest on the theory that the denial of the business license sought by its lessee, the Jimmie Hale Mission, to open an "upscale thrift store" had the purpose and effect of interfering with plaintiff's First, Fifth, and Fourteenth Amendment rights to utilize its real property in a manner consistent with law and zoning regulations and to associate with other people and groups, namely "low income and minority people."[5]  Plaintiff contends that the denial of the business license to the Mission was arbitrary, capricious, and discriminatory in such a way that *plaintiff's* rights as the landowner leasing to the Mission, not just those of the Mission,

---

[5]  Plaintiff's federal claims seem to tract three of the four types of land-use regulatory claims outlined in Eide v. Sarasota County, 908 F.2d 716 (11th Cir. 1990).  "First, a plaintiff can claim that the regulation at issue has taken his or her property without just compensation in contravention of the Fifth Amendment."  Id. at 720; see Williamson County v. Hamilton Bank, 473 U.S. 172, 186–97, 105 S. Ct. 3108, 3116–22, 87 L. Ed. 2d 126 (1985).  The later case of Villas of Lake Jackson, Ltd., v. Leon County, 121 F. 3d 610, 612 (11th Cir. 1997), made clear that the "substantive due process takings" claim outlined in Eide is now subsumed under the traditional just compensation claim, not a distinct claim itself.  In the second type of claim, "plaintiff may argue that the regulation is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals, or general welfare, and is therefore an invalid exercise of the police power."  Eide at 721; see Nectow v. City of Cambridge, 277 U.S. 183, 236, 48 S. Ct. 447, 448, 72 L. Ed. 842 (1928); Greenbriar v. City of Alabaster, 881 F.2d 1570, 1577 (11th Cir. 1989); Stansberry v. Holmes, 613 F.2d 1285, 1289 (5th Cir.), cert. denied, 449 U.S. 886, 101 S. Ct. 240, 66 L.Ed.2d 112 (1980).  This is referred to as an "arbitrary and capricious due process claim."  The third and last type of claim asserts "that the regulation denies equal protection.  If the plaintiff claims that the regulation acts against him or her because of race or another suspect class or that the regulation involves a fundamental right, then the regulation is subject to strict scrutiny."  Id. at 722; see San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 16–17, 93 S. Ct. 1278, 1287–88, 36 L.Ed.2d 16 (1973).  Plaintiff's Count Six appears to be a Fifth Amendment "just compensation takings" claim, while Counts Four and Five alleged equal protection denials based on race and income, as well as a substantive due process claim for infringement of the fundamental First Amendment right of association.  Count Twelve seems to be a "class of one" equal protection claim.  Count Two alleges an "arbitrary and capricious due process" claim, while Count Three pleads a denial of procedural due process in that plaintiff was deprived of a property interest without adequate pre- or post-deprivation procedures.  Count Seven alleges a facial challenge to the constitutionality of the City's business license ordinance.

were infringed.[6]  In response to these claims, the defendants argue that the controversy is not yet ripe because, in fact, the City has not finally denied the business license application by the Mission; that plaintiff has failed to allege a constitutionally protected liberty or property interest for either substantive or procedural due process purposes; that the individual defendants are entitled to qualified immunity and legislative immunity; and other defenses.

A.  *Ripeness*

The court first addresses the defendants' argument that, for Article III jurisdictional purposes, the entire controversy is not yet ripe because the City, in fact, has never denied the Mission's business license application.  Ripeness goes to the Article III jurisdiction of the court and addresses whether there is a sufficiently concrete controversy to meet the "case or controversy" requirement of Article III.

> Article III of the Constitution limits the jurisdiction of the federal courts to actual cases or controversies and requires us to consider whether a plaintiff's claims are ripe. U.S. Const. Art. III, § 2, cl. 1; *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808, 123 S. Ct. 2026, 2030, 155 L. Ed. 2d 1017 (2003) ("The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction ...."); see also *Konikov v. Orange County, Fla*., 410 F.3d 1317, 1322 (11th Cir. 2005).  The ripeness doctrine keeps federal courts from deciding cases prematurely.  *Digital Props.*[*Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997)].  It "protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes."  *Id*.; see also *Konikov*, 410 F.3d at 1322 ("The purpose of this doctrine is to avoid entangling ourselves in abstract disagreements, and also to shield agencies from judicial interaction until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.") (alteration and internal quotation marks omitted).  "Courts must resolve ... whether the claim is sufficiently mature, and the issues

---

[6]  The court has previously discussed at length its view that the plaintiff may not use the alleged violation of the rights of the Mission as a basis on which plaintiff can invoke third-party standing to prosecute this action.  In response, plaintiff has argued adamantly that it is not invoking the rights or claims of the Mission, but violations of *its own* rights.  In analyzing plaintiff's claims, therefore, the court focuses exclusively on whether the facts alleged state a plausible claim for infringement of the plaintiff's constitutional and legal rights.

sufficiently defined and concrete, to permit effective decisionmaking by the court." *Digital Props.*, 121 F.3d at 589 (internal quotation marks omitted).

Beaulieu v. City of Alabaster, 454 F.3d 1219, 1227 (11th Cir. 2006).  Ripeness is broken into two criteria, which have three sub-factors.

> To determine whether a claim is ripe we must evaluate: (1) "the fitness of the issues for judicial decision"; and (2) "the hardship to the parties of withholding court consideration." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1315 (11th Cir. 2000) (internal quotation marks omitted). In applying the fitness and hardship prongs we must consider the following factors: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733, 118 S. Ct. 1665, 1670, 140 L. Ed. 2d 921 (1998); see also *Ala. Power Co. v. Fed. Energy Regulatory Comm'n*, 685 F.2d 1311, 1315 (11th Cir. 1982) (listing four similar factors).

Id.  Applying these factors, the court finds that the case is ripe and appropriate for adjudication.

First, the case is fit for a judicial decision.  There does not appear to be any further activities or proceedings regarding the Mission's business license. While the City contends the application has never been formally denied, nothing has happened on the application for over two years.  This may be either because the application was withdrawn by the Mission, or the Council's actions on January 24, 2011, amounted to a full and final rejection of the application. Under either view, the plaintiff still has suffered whatever loss is attributable to the Mission's inability to secure a business license.  Next, looking at the three sub-factors, plaintiff Vestavia Plaza has and will continue to suffer hardship if its claims cannot proceed.  There is no indication that further administrative activity is ongoing or that additional factual development would significantly alter the understanding of the case as it now exists.  There is no reason to believe

that delaying adjudication will materially advance a resolution of the dispute that now exists or alter the relationship of the parties now existing.

The ripeness is especially critical to plaintiff's Fifth and Fourteenth Amendment "takings" claim in Count Six, which alleges a traditional Fifth Amendment "Just Compensation Clause" claim.  In that count, plaintiff alleges explicitly that the decision of the City Council denying the business license application by the Mission was an effective "taking" of a property interest for which plaintiff is entitled to just compensation.  For a federal "takings" claim to be ripe, it must meet two requirements: first, there must be a final decision of the governmental body alleged to have deprived the plaintiff if a compensable property interest, and second, the plaintiff must have been denied "just compensation" even though he has followed state procedures for seeking compensation.  Although defendants dispute that a "final" decision has been made by the City to deny to the business-license application, plaintiff alleges that it is futile for it continue to seek such a final decision in light of the city council's clear vote to deny the resolution approving the agreement reached with the mayor.  Moreover, it appears that the Just Compensation Clause claim in Count Six is ripe for federal adjudication because plaintiff has no state judicial remedies in the form of an inverse condemnation action in state court available to it.

As the Supreme Court has explained, requiring a landowner to utilize state judicial procedures is not the same as requiring exhaustion of *administrative* remedies.  In the context of a Fifth Amendment "taking" without just compensation, it cannot be said that a landowner is finally deprived of a property interest without just compensation unless and until state post-deprivation remedies are proven inadequate to provide compensation.  The Court explained:

A second reason the taking claim is not yet ripe is that respondent did not seek compensation through the procedures the State has provided for doing so. The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S., at 297, n. 40, 101 S. Ct., at 2371, n. 40. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "'reasonable, certain and adequate provision for obtaining compensation'" exist at the time of the taking. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124-125, 95 S. Ct. 335, 349, 42 L. Ed. 2d 320 (1974) (quoting <u>Cherokee Nation v. Southern Kansas R. Co.</u>, 135 U.S. 641, 659, 10 S. Ct. 965, 971, 34 L. Ed. 295 (1890)). … If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking. *Monsanto*, 467 U.S., at 1013, 1018, n. 21, 104 S. Ct., at 2878, 2881, n. 21. Thus, we have held that taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act, 28 U.S.C. § 1491. *Monsanto*, 467 U.S., at 1016-1020, 104 S. Ct., at 2880-2882. Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

* * *

Under Tennessee law, a property owner may bring an inverse condemnation action to obtain just compensation for an alleged taking of property under certain circumstances. Tenn.Code Ann. § 29-16-123 (1980). … Respondent has not shown that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature.

<u>Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 194-97, 105 S. Ct. 3108, 3120-22, 87 L. Ed. 2d 126 (1985) (internal citations and footnotes omitted).

Following this precedent, courts in the Eleventh Circuit have held that "takings" claims for just compensation under the Fifth and Fourteenth Amendments are ripe only when the State fails to provide adequate post-deprivation remedies for the taking. "Under *Williamson County*, a takings clause claim is not ripe until the litigant has exhausted any potential means of obtaining compensation from the state, including judicial proceedings. The lack of ripeness deprives the

federal courts of subject matter jurisdiction over a takings clause claim prior to the completion of the requisite state court proceedings."  Fields v. Sarasota Manatee Airport Authority, 953 F.2d 1299, 1305 (11th Cir. 1992) citing Eide v. Sarasota County, 895 F.2d 1326, 1328–29 (11th Cir.1990), opinion withdrawn on rehearing on other grounds, 908 F.2d 716 (11th Cir.1990) (substituted opinion); see also Prescott v. Florida, 343 F. App'x 395, 399 (11th Cir. 2009) (just compensation claim was not ripe because plaintiffs had not alleged exhaustion of inverse condemnation action in state court); R.E. Grills Construction Co., Inc. v. Alabama Department of Transportation, 198 F. Supp. 2d 1297, 1302 (N.D. Ala. 2002) (dismissing "takings" claim as not ripe).  Only once those judicial remedies have proven inadequate to fairly compensate the landowner can it be said that he has been denied fair compensation for the property interest taken.

Although Alabama law appears to provide the same type of inverse condemnation remedy recognized by the Supreme Court under Tennessee law, see Alabama Code § 18-1A-32 (1975) and § 235 of the Alabama Constitution of 1901, recent Alabama Supreme Court precedent has made clear that § 235 does not provide a cause of action for inverse condemnation in connection with *regulatory* takings.  In Town of Gurley v. M & N Materials, Inc., the Alabama Supreme Court addressed whether § 235 covered regulatory takings of property rights not involving an actual *physical* disturbance of the property.  The court held that it did not, writing:

> Section 235, entitled "Taking of property for public use by municipal and other corporations," provides, in pertinent part:
>
> > "Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or

> enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction."

The parties have not directed this Court's attention to any precedent in which an inverse-condemnation claim based upon a regulatory "taking" by a municipal corporation was brought invoking § 235.  The Town argues that, under the plain language of § 235—that the property must be "taken, injured, or destroyed *by the construction or enlargement of its works, highways, or improvements ...*" (emphasis added)—an inverse-condemnation claim based upon a municipal corporation's regulatory "taking" of property is not sustainable.  The Town argues that under § 235 there are essentially two requirements that must be met in order to maintain an inverse-condemnation claim: The party alleging that its property has been taken pursuant to inverse condemnation must prove, first, that the property has been "taken, injured, or destroyed" and, second, that the property has been physically disturbed.

* * *

We find the Town's argument persuasive. As this Court stated in *Jefferson County v. Weissman*, 69 So. 3d 827, 834 (Ala.2011): "We are cognizant that the long-settled and fundamental rule binding this Court in construing provisions of the constitution is adherence to the plain meaning of the text."  Within the plain meaning of its text, § 235 does not make compensable regulatory "takings" by an entity or person vested with the privilege of taking property for public use.  As set forth in our long-standing precedent, the taking, injury, or destruction of property must be through a physical invasion or disturbance of the property, specifically "by the construction or enlargement of [a municipal or other corporations'] works, highways, or improvements," not merely through administrative or regulatory acts.

<u>Town of Gurley v. M & N Materials, Inc.</u>, 2012 WL 6634447, *8-9 (Ala. Dec. 21, 2012) (italics in original).   Under this authority, it appears that Alabama does not provide for inverse condemnation actions where a property interest is "taken" by regulatory action, rather than actual physical invasion or destruction.  Because Alabama does not provide this remedy (as Florida and other states do), plaintiff has no state judicial remedy to exhaust and, therefore, its Fifth Amendment just compensation claim in Count Six is ripe for adjudication in this court.

16

B.  *Constitutionally Protected Property/Liberty Interest*

The defendants assert that plaintiff, Vestavia Plaza, has not alleged a sufficient property or liberty interest recognized and protected by the constitution.  Defendants frame this argument in two ways, contending that the plaintiff has no property or liberty interest in the business license sought by its lessee, the Mission, or in seeking to compel the City to enter into a contractual agreement with it.  Vestavia Plaza responded by asserting that it is has been deprived of a property interest as a landowner in the use and benefit of the rental property it sought to lease to the Mission, as well as a liberty interest in associating with the Mission and those served by it.  The plaintiff stresses that the business-license code provision involved here is location specific; that is, that *each location* of a business in Vestavia Hills must separately apply for and obtain a business license, and that this provision effectively allows the City to control land use through the granting or denial of business licenses, much like a zoning regulation, which directly impacts plaintiff's property interests as a commercial landowner in Vestavia Hills.  Additionally, plaintiff alleges that the City's denial of the business license to the Mission was discriminatory because the Mission serves "low-income and minority" patrons.  This purposeful discrimination deprived the plaintiff of its Fourteenth Amendment right to be free from "associational discrimination" (i.e., the victim of discrimination based on the persons it associates with) and it burdened plaintiff's First Amendment right to freely associate with others.

At this pleading stage of the case, the court believes plaintiff has sufficiently alleged constitutionally recognized and protected property and liberty interests.  It is important to understand that plaintiff's claims assert not an interest in the business license of its lessee, but that the business-license requirement is merely the vehicle through which the defendants exercise land-use regulation.  The granting or denial of business licenses is a way of regulating land use,

and therefore directly impacts plaintiff's interest as a landowner.  Whether the evidence will ultimately bear out these allegations, which the court must assume at this point to be true, remains to be seen, but there can be little question that ownership of real property and the "bundle" of rights associated with its use are well-recognized and protected property interests for due process purposes under the constitution.   See, e.g. Villas of Lake Jackson, Ltd. v. Leon County, 121 F.3d 610, 612 (11th Cir. 1997) ("The Supreme Court has construed the Takings Clause beyond its original application to formal government expropriations to now define and protect a more general property right that constrains excessive land-use regulation"); First English Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987).  The protected right to own and use real property is at the heart of many land-use and zoning disputes between property owners and governments at all levels.  The court has no problem identifying real property ownership as a sufficient property interest to invoke constitutional protections.

Likewise, associational rights implicate two constitutional concerns: first, the First Amendment right to associate with others as a matter of free expression, and second, the Fourteenth Amendment equal-protection right to be free of governmental discrimination based on invidious classifications.  "In Roberts v. United States Jaycees, 468 U.S. 609, 622, 104 S. Ct. 3244, 82 L.Ed.2d 462 (1984), we observed that 'implicit in the right to engage in activities protected by the First Amendment' is 'a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'"  Boy Scouts of America v. Dale, 530 U.S. 640, 647, 120 S. Ct. 2446, 2451, 147 L. Ed. 2d 554 (2000).[7]

---

[7]   "But the freedom of expressive association, like many freedoms, is not absolute.  We have held that the freedom could be overridden 'by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means

Also, the Fourteenth Amendment equal protection clause prohibits states and municipalities from engaging in purposeful discrimination based on race. This protection extends to persons subjected to discrimination, not because of their own race, but because they associate with others of a different race. See ,e.g., Boggan v. McLendon, 2005 WL 1618550 (M.D. Ala. July 5, 2005) ("Plaintiff claims that he was terminated because of his close association with his Caucasian acquaintance…. Plaintiff's association discrimination claims brought under § 1983 are thus claims alleging violation of his right to equal protection as provided in the Fourteenth Amendment."). Therefore, although it remains to be seen whether plaintiff can prove these interests in fact, it has sufficiently alleged them for purposes of stating claims for denial of procedural due process,[8] denial of equal protection, and a "taking" under the Just Compensation Clause.

C. *Substantive Due Process*

Defendants move to dismiss Count Two of the Amended Complaint, arguing that it attempts to state a claim for violation of substantive due process even though the denial of a business license does not involve the infringement of a fundamental constitutional right. Plaintiff has counter-argued that its property rights as a landowner are infringed by the City's use of its business-license code as a "standardless super-veto… to prevent plaintiff from using its property to allow a nonprofit mission to operate a thrift store…." Also, plaintiff contends that

---

significantly less restrictive of associational freedoms.'" Boy Scouts of Am. v. Dale, 530 U.S. 640, 648, 120 S. Ct. 2446, 2451, 147 L. Ed. 2d 554 (2000). For a right to expressive association to exist, the group or association must exist for or be engaged in "expression," which itself is a fact-intensive analysis. Id. at 648.

[8] Being a creature of state law, rights in real property are not "fundamental" rights protected by the concept of substantive due process. See Greenbriar Village, L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003) (*per curiam*); Busse v. Lee County, Fla., 317 F. App'x 968, 973 (11th Cir. 2009).

the denial of the business license to the Mission infringed plaintiff's First Amendment right to associate with the Mission and its customers and clients.

Insofar as plaintiff grounds its substantive due process claim on its rights as a property owner, Count Two alleges nothing more than or separate from the Just Compensation claim alleged in Count Six.   Although in Eide v. Sarasota County, 908 F.2d 716 (11th Cir. 1990), the Eleventh Circuit outlines four types of claims a property owner can make with respect to land-use regulations, one of which was a "substantive due process takings" claim, in the case of Villas of Lake Jackson, Ltd., v. Leon County, 121 F. 3d 610, 612 (11th Cir. 1997), the court of appeals made clear that the "substantive due process takings" claim outlined in Eide is now subsumed under the traditional just compensation claim, and is not a distinct claim itself.   "The most significant holding on this appeal is that, other than a due process claim based on arbitrary and capricious action, there is no 'substantive due process takings' cause of action available in such a case, separate and apart from a cause of action under the Takings Clause of the United States Constitution."  Villas of Lake Jackson, Ltd. v. Leon County, 121 F.3d 610, 611 (11th Cir. 1997). The court explained:

> In essence, landowners argue that under the due process clause they may challenge the taking that occurs when a specifically recognized property right, vested under state law, is taken away -- even though they might still retain enough use of the property to avoid a taking under the Takings Clause if you considered the parcel as a whole -- because the due process clause protects each of those specific, finite, property rights in the entire bundle of rights associated with a piece of property.
>
> Recent Supreme Court "takings" jurisprudence and the well established contours of substantive due process law dictate, however, that if a challenge to a "regulatory taking" states a claim upon which relief may be granted at all, it is a cause of action under the Takings Clause, subject to the ripeness prerequisite of exhaustion of the state-court inverse condemnation remedy….   There is no independent "substantive due process taking" cause of action. The only substantive due process claim is for arbitrary and capricious conduct.

Villas of Lake Jackson, Ltd. v. Leon County, 121 F.3d 610, 612 (11th Cir. 1997).

Even though no "substantive due process takings" claim exists apart from a traditional "Takings Clause" claim (alleged here in Count Six), Leon County continued to recognize a separate "arbitrary and capricious due process" claim, which asserts that the regulatory act was so arbitrary and capricious that it was not a proper exercise of the government's police power.  In the instant case, Count Two of the Amended Complaint alleges that "[b]y arbitrarily and capriciously prohibiting a property use that was permitted under the zoning classification for Vestavia Plaza's property and interfering with Vestavia Plaza's contract with JHM, Defendants unreasonably and unconstitutionally interfered with and infringed upon the property and liberty rights of Vestavia Plaza."  (Doc. 35, ¶ 38).  The court, therefore, reads Count Two as alleging an "arbitrary and capricious due process" claim, rather than a "substantive due process takings" claim.  Read as such, the claim stands independently of Count Six, and the motion to dismiss it is due to be denied.

### D. *Civil Conspiracy*

Count Nine of plaintiff's Amended Complaint alleges that the individual defendants, "Pierce, Ammons, Sharp, Zaragoza, and Leavings conspired and combined to wrongfully interfere without justification with the business and contractual relationship between Vestavia Plaza and JHM and to restrict, take, and interfere with Vestavia Plaza's property, liberty, association, and contract rights."  This count seems to allege claims under both federal and state law.  Defendants move to dismiss this count under the intracorporate conspiracy doctrine, arguing that these individuals were all employees or officials of the City of Vestavia Hills and

acting on behalf of the City.  Plaintiff's brief in opposition to the motion to dismiss does not

address this contention (Doc. 39).

Under federal law, the intracorporate conspiracy doctrine prevents a finding that a

corporation and its own employees can conspire with one another.  For example:

> The intracorporate conspiracy doctrine holds that acts of corporate agents are
> attributed to the corporation itself, thereby negating the multiplicity of actors
> necessary for the formation of a conspiracy.  Simply put, under the doctrine, a
> corporation cannot conspire with its employees, and its employees, when acting in
> the scope of their employment, cannot conspire among themselves.  The doctrine
> is based on the nature of a conspiracy and the legal conception of a corporation.
> It is by now axiomatic that a conspiracy requires a meeting of the minds between
> two or more persons to accomplish a common and unlawful plan.  *See Bivens
> Gardens Office Bldg., Inc. v. Barnett Banks Inc*., 140 F.3d 898, 912 (11th Cir.
> 1998) (explaining that a civil conspiracy ordinarily requires "an agreement
> between two or more people to achieve an illegal objective, an overt act in
> furtherance of that illegal objective, and a resulting injury to the plaintiff").
> However, under basic agency principles, the acts of a corporation's agents are
> considered to be those of a single legal actor.  *Dussouy v. Gulf Coast Inv. Corp*.,
> 660 F.2d 594, 603 (5th Cir. 1981); *see also United States v. Hartley*, 678 F.2d
> 961, 970 (11th Cir. 1982). Therefore, just as it is not legally possible for an
> individual person to conspire with himself, it is not possible for a single legal
> entity consisting of the corporation and its agents to conspire with itself.

McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000).[9]  The doctrine has

been applied to governmental employees as well as private employees.  See Chambliss v. Foote,

562 F.2d 1015 (5th Cir.1977), aff'g, 421 F.Supp. 12, 15 (E.D.La.1976) (applying the

intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its

officials); Wright v. Illinois Dept. of Children & Family Services, 40 F.3d 1492, 1508 (7th Cir.

1994) (holding that the intracorporate conspiracy doctrine applies not just to private entities but

---

[9]   The court held in McAndrew that the intracorporate conspiracy doctrine does not bar the
creation of a conspiracy among corporate employees with respect to a claim under 42 U.S.C.
§ 1985(2), because such a claim necessarily alleges criminal activity.  Such a claim is not
pleaded in the instant case.

also to government agencies such as the Department of Children and Family Services); Runs After v. United States, 766 F.2d 347, 354 (8th Cir. 1985) ("The Tribal Council as an entity or governmental body cannot conspire with itself."); Dickerson v. Alachua County Commission, 200 F.3d 761, 767 (11th Cir. 2000); Grider v. City of Auburn, Ala., 618 F.3d 1240, 1261 (11th Cir. 2010).  Similarly, Alabama law recognizes the application of the intracorporate conspiracy doctrine.  See M & F Bank v. First American Title Ins. Co., 2013 WL 4295044, *10 (Ala., Aug. 16, 2013) citing Grider v. City of Auburn, Ala., 618 F.3d 1240 (11th Cir. 2010), and McAndrew v. Lockheed Martin Corp., 206 F.3d 1031 (11th Cir. 2000).

Plaintiff pleads affirmatively that defendants Pierce, Sharp, Ammons, Zaragoza, and Leavings are all officials or employees of the City.  There is no allegation that they conspired with anyone not employed by the City.  Thus, under the intracorporate conspiracy doctrine, plaintiff has failed to allege the existence of any agreement or meeting of the minds, as the only entity involved here was the City and its employees, who are all regarded as a single entity. Accordingly, Count Nine is due to be dismissed whether it is grounded in federal or state law.

E.  *Facial Challenge to the Constitutionality of Ordinance No. 2315*

Count Seven of the Amended Complaint alleges that the Business License Code, Ordinance No. 2315, itself is unconstitutional for several reasons.  Paragraph 61 pleads:

> Vestavia Hills Ordinance Number 2315 is unconstitutionally vague, unintelligible, and overbroad and fails to put landowners and lessors on notice regarding what uses of their property are restricted; fails to put lessors on notice regarding which lessees they can successfully contract with to operate a business; grants standardless discretion to the decision-makers; fails to put applicants on notice of what is required to satisfy the law and obtain a business license; fails to provide any process or procedure for protection of landowners rights; and fails to protect the reasonable investment-backed expectations of lessors contracting with lessees.

(Doc. 35, ¶ 61).  The constitutionality of the ordinance is challenged on the grounds that it is (1) vague, (2) unintelligible, (3) overbroad, (4) fails to give landowners notice of restrictions on land use, (5) fails to give lessors notice of which lessees are acceptable, (6) gives standardless discretion to officials, (7) fails to put business-license *applicants* on notice of what the law requires,[10] (8) fails to provide procedures for protecting the rights of landowners, and (9) fails to protect the "investment-backed expectations" of lessors contracting with lessees.  It is not clear, however, what specific constitutional provisions or theories plaintiff says are infringed by the ordinance.

As a threshold matter, the court observes that the statute at issue is a business-license code which, in the context of this case, involves no regulation of speech or expressive conduct. Plaintiff's interest as a landowner and lessor is a commercial one:  the right to use its real property for leasing.  Plaintiff does allege that the denial of the Mission's application infringed plaintiff's First Amendment right to associate with the Mission and its clients and customers, but it does not allege that this was an "expressive association," an association for the purpose of expressing constitutionally protected ideas.  Insofar as plaintiff intends for Count Seven to mount a facial First Amendment challenge to the ordinance, plaintiff must carry the heavy burden of alleging facts to show that the statute cannot be constitutionally applied to any circumstance. The Eleventh Circuit has written this about facial challenges:

> "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself."  United States v. Frandsen, 212 F.3d 1231, 1235 (11th Cir. 2000).  The general rule is that for a facial challenge to a legislative enactment to succeed, "the challenger must establish that no set of

---

[10]  For reasons previously explained, plaintiff has no third-party standing to assert the rights or interest of business license *applicants*.  Plaintiff did not apply for a business license, nor was it denied one.  Thus, plaintiff may not attack the ordinance on the ground that it infringes the rights of applicants.

circumstances exists under which the Act would be valid." <u>United States v. Salerno</u>, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). "The fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid...." <u>Id</u>. This "heavy burden" makes such an attack "the most difficult challenge to mount successfully" against an enactment.

<u>Horton v. City of St. Augustine, Fla.</u>, 272 F.3d 1318, 1329 (11th Cir. 2001).[11]  This is because a plaintiff who "asserts a facial challenge to a statute is seeking not only to vindicate his own rights, but also those of others who may be adversely impacted by the statute." <u>DA Mortgage, Inc. v. City of Miami Beach</u>, 486 F.3d 1254, 1262 (11th Cir. 2007).  Because the plaintiff's attack in this case seeks to invalidate the ordinance, not merely limit its application against the plaintiff, and because it does not allege that the ordinance burdened *its* speech or expression, this is a facial challenge, not an "as-applied" challenge.

More importantly, because Count Seven does not allege any First Amendment burdening of speech, the municipal business license ordinance falls well within the City's police power to regulate businesses and occupations within its jurisdiction.

> The power and necessity for… municipal governments to impose restrictions through zoning laws and ordinances is no longer subject to question.  *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926);….  A zoning statute or ordinance should not be declared unconstitutional unless its "provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  *Euclid*, 272 U.S. at 395, 47 S. Ct. at 121.  And the exercise of police power in this regard must be upheld if any state of facts either known or which could be reasonably assumed affords

---

[11]   A general exception to the *"Salerno* rule," which does not apply to this case, exists in First Amendment expression cases where overbreadth may chill expressive conduct.  This exception allows a plaintiff to facially challenge a statute or regulation even when there may be circumstances under which it is constitutionally unobjectionable.  <u>See Forsyth County v. Nationalist Movement</u>, 505 U.S. 123, 129, 112 S. Ct. 2395, 2401, 120 L. Ed. 2d 101 (1992); <u>United States v. Frandsen</u>, 212 F.3d 1231, 1236 (11th Cir. 2000).

support for it.  United States v. Carolene, 304 U.S. 144, 154, 58 S. Ct. 778, 82 L.Ed. 1234, 1242 (1938).

106 Forsyth Corp. v. Bishop, 362 F. Supp. 1389, 1392 (M.D. Ga. 1972) aff'd, 482 F.2d 280 (5th Cir. 1973).  Likewise, municipalities may regulate business activity.

> Business regulations such as these [regulating the hours of pawn shops] are reviewed under the rational basis test.  *Exxon v. Eagerton*, 462 U.S. 176, 195, 103 S. Ct. 2296, 2308, 76 L. Ed. 2d 497 (1983);….

> This test is generally easily met. A searching inquiry into the validity of legislative judgments concerning economic regulation is not required.  *Williamson v. Lee Optical Co*., 348 U.S. 483, 488, 75 S. Ct. 461, 464, 99 L. Ed. 563 (1954). The task is to determine if "any set of facts may be reasonably conceived to justify" the legislation.  *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S. Ct. 1101, 1105, 6 L. Ed. 2d 393 (1961).  To put it another way, the legislation must be sustained if there is any conceivable basis for the legislature to believe that the means they have selected will tend to accomplish the desired end.  Even if the court is convinced that the political branch has made an improvident, ill-advised, or unnecessary decision, it must uphold the act if it bears a rational relation to a legitimate governmental purpose.  *Minnesota v. Clover Leaf Creamery Co*., 449 U.S. 456, 469, 101 S. Ct. 715, 726, 66 L. Ed. 2d 659 (1981).

> Under the rational basis test, the primary issues are: first, whether the government has the power or authority to regulate the particular area in question; and second, whether the method the Government has chosen to accomplish this goal bears a rational relation to the ultimate objective.

Cash Inn of Dade, Inc. v. Metropolitan Dade County, 938 F.2d 1239, 1241 (11th Cir. 1991). Recently, again, the court of appeals reiterated that "[a] statute is constitutional if 'there is any reasonably conceivable state of facts that could provide a rational basis for [it].'   The party challenging the statute bears the burden of proving that the statute lacks a rational basis."  Locke v. Shore, 634 F.3d 1185, 1196 (11th Cir. 2011) cert. denied, 132 S. Ct. 1004, 181 L. Ed. 2d 734 (U.S. 2012) citing Bah v. City of Atlanta, 103 F.3d 964, 967 (11th Cir. 1997) (citing FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314–15, 113 S. Ct. 2096, 2101–02, 124 L. Ed. 2d 211 (1993)) (internal citations omitted).

In this case, there can be little question that the business-license ordinance meets the rational-basis test.  Not only is the business-license ordinance a revenue-raising measure, <u>see</u> Ordinance No. 2315, § 1, it is a regulatory statute, design to promote "the health, safety, comfort and convenience of the public" and to abate "nuisance[s]." <u>Id.</u>, § 15.  A license can be denied if necessary to "provide for the safety, preserve the health, promote the prosperity, or improve the morals, order, comfort and convenience of the inhabitants of the municipality…." <u>Id.</u> § 18(f).  Certainly, the municipal government has the power to legislate in the areas of safety and health, and to "improve the morals, order, comfort, and convenience" of its residents.  The use of a business license as a regulatory method bears a rational relationship to the ends of eliminating or restricting businesses that are threats to the health, safety, morals, or comfort of inhabitants.

> Businesses seeking to challenge economic regulations must do more than submit evidence which calls the articulated purposes of the legislation into doubt.  They must demonstrate that the legislature could not have reasonably believed that the legislation would attain its aims.  *Clover Leaf Creamery Co.,* 449 U.S. at 463-64, 101 S. Ct. at 723-24.  The question is not whether the legislation will in fact accomplish its goals, but whether the legislative body could rationally have concluded that it would.  *Id.* at 466, 101 S. Ct. at 725.

<u>Cash Inn of Dade, Inc. v. Metropolitan Dade County</u>, 938 F.2d 1239, 1244 (11th Cir. 1991).

The ordinance is not overbroad.  First, as already mentioned, plaintiff does not allege that the business license ordinance infringes any First Amendment speech or assembly rights.  <u>See</u> <u>Miles v. City Council of Augusta, Ga.</u>, 710 F.2d 1542 (11th Cir. 1983).  It does not seek to legislate or regulate in matters outside the general police power of a city or into constitutionally protected areas.  On its face, it is content neutral; it does not purport to regulate speech or expression, except in the incidental sense that speech is used in commercial businesses.  A commercial business regulation remains constitutional where any infringement of speech is

merely incidental to otherwise legitimate regulation of business.  See Locke v. Shore, 634 F.3d 1185, 1191 (11th Cir. 2011) cert. denied, 132 S. Ct. 1004, 181 L. Ed. 2d 734 (U.S. 2012) (statute requiring license for interior designers).  The overbreadth doctrine only "permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." Locke v. Shore, 634 F.3d 1185, 1191 (11th Cir. 2011) cert. denied, 132 S. Ct. 1004, 181 L. Ed. 2d 734 (U.S. 2012) citing City of Chicago v. Morales, 527 U.S. 41, 52, 119 S. Ct. 1849, 1857, 144 L. Ed. 2d 67 (1999) (quotation marks omitted); see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362 (1982).  If there is any First Amendment infringement due to this ordinance, it is not substantial in relation to the legitimate sweep of its taxing and regulatory purposes.

    The ordinance is not vague or unintelligible.  "To avoid constitutional vagueness, a statute must provide 'an ascertainable standard of guilt sufficient to enable persons of ordinary intelligence' to have fair warning of the conduct proscribed by the law.  *High Ol'Times, Inc. v. Busbee*, 673 F.2d 1225, 1229 (11th Cir. 1982).  Exacting attention to detail in drafting is not required. *Id*." Miles v. City Council of Augusta, Ga., 551 F. Supp. 349, 352 (S.D. Ga. 1982) aff'd, 710 F.2d 1542 (11th Cir. 1983).  Moreover, a "court should… examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.  A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362 (1982).  In this case, a person of reasonable intelligence can understand its

requirements of a location-specific license and tax to operate a business with the jurisdiction of the City.  It contains an exhaustive list of the types of businesses that must be licensed, including "General merchandise stores."  Insofar as landowners are concerned about land uses and lessees impacted by the business license code, the ordinance makes clear what types of businesses must be licensed and, hence, the types of land uses and lessees that require a business license.  Perhaps more important here, the plaintiff  – Vestavia Plaza – is not directly implicated by the business license ordinance.  It was not the license applicant and it was not denied a license.  While it may have been indirectly affected, it was not an entity regulated or even arguably regulated by the ordinance under the facts pleaded in this case.  To the extent it complains about vagueness in the statute, plaintiff has no standing.

Decision-makers are not given "standardless discretion" to deny business licenses. Section 18(f) explicitly defines the circumstances under which a license may be denied:  when necessary to "provide for the safety, preserve the health, promote the prosperity, or improve the morals, order, comfort and convenience of the inhabitants of the municipality…."  Id. § 18(f). While these standards are admittedly broad, statutes of general application necessarily must be broad.  A statute need not define with precision each of manifold circumstances that may give rise to legitimate concerns for health, safety, prosperity, morals, and good order.  The exercise of discretion to grant or deny the license is guided by these standards.   Because there is no allegation that the statute infringes First Amendment speech, the chance that standardless discretion may chill speech is non-existent.  Also, again, plaintiff has no standing to complain about the discretion or standards used for denying a business license because it did not apply for a license and it was not denied a license.

Plaintiff argues that the ordinance is facially unconstitutional because it lacks procedures for *landowners* to protect their interest, presumably as lessors.  The absence of procedures in the statute does not necessarily render it facially unconstitutionally as long as, in fact, procedures exist to protect recognized property interests.   Here, the procedures available to license applicants related to the granting or denial of a business license are set out in the ordinance.  What is not provided are procedures for persons *indirectly* impacted by the denial of the license to the applicant.  While such an indirect impact might support a Just Compensation claim, the statute cannot be said to be *facially* invalid because it lacks procedures for every conceivable party indirectly harmed by the applicant's denial.  Must the ordinance provide procedures for the applicant's creditors, who may be harmed by the applicant's inability to secure a business license?  Must the statute provide procedures for the applicant's spouse or family, who may be harmed by the applicant's inability to obtain a license?  The scope of the statute is correctly limited to those who seek to invoke the statute and who are *directly* harmed by a denial under it.  The license ordinance in this case is not *facially* invalid simply because it provides no procedures by which *indirectly* impacted parties may complain about the denial of business license to someone else.

Finally, insofar as plaintiff challenges the ordinance on the basis that it does not protect the investment-backed expectations of landowners, its claim is the same as that alleged in Count Two of the Amended Complaint, that the ordinance is an arbitrary and capricious denial of due process[12] because it is not rationally related to any legitimate governmental interest.[13]   Because

---

[12]   A district court has summarized the Eleventh Circuit precedent:

In the Eleventh Circuit, an arbitrary or capricious legislative act may provide the basis for a substantive due process claim, which is called an "arbitrary and capricious due process claim."  *Villas of Lake Jackson*, 121 F.3d at 611, 615; see

the facial challenge to the ordinance alleges in Count Seven is redundant of the "arbitrary and capricious due process" claim in Count Two, Count Seven will be dismissed.

F.  *Legislative and/or Qualified Immunity*

Individual defendants Pierce, Ammons, Sharp, Zaragoza, and Leavings move to dismiss all federal claims against them on the assertion of both legislative immunity and qualified immunity.[14]   The court agrees that defendants Pierce, Ammons, and Sharp, as members of the city council are entitled to legislative immunity to the extent that plaintiff challenges the constitutional validity of Ordinance No. 2315 on its face, but that they are not entitled to legislative immunity with respect to their specific decision to deny the Mission a business license.[15]   Further, it is clear that defendants Zaragoza (as mayor) and Leavings (as city clerk) were not acting in any legislative capacity and are not entitled to legislative immunity.  The court finds, however, that individual defendants Zaragoza and Leavings are entitled to qualified immunity from damages, but defendants Pierce, Ammons, and Sharp are not.

---

*also Eide*, 908 F.2d at 721-22 (stating that while other courts refer to a claim based on arbitrary and capricious legislation as a substantive due process claim, the Eleventh Circuit refers to this claim as an arbitrary and capricious due process claim).  A balancing test is used to determine whether the city's decision was arbitrary and capricious or whether it was substantially related to general welfare interests, including its effect on aesthetics and surrounding property values.  *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1374-75 (11th Cir.1993).

Romero v. Watson, 2009 WL 1361714, *6 (N.D. Fla. May 13, 2009).

[13]   Admittedly, Count Three also alleges a *procedural* due process challenge in that the City failed to provide procedures by which landowners could challenge the denial of a business license to a potential lessee.

[14]   The Amended Complaint makes clear that these defendants are sued only in their individual capacities, not in any official capacity.

[15]   The court acknowledges that the parties dispute whether the business license application was ever denied.  However, plaintiff alleges that it was, in fact, denied, and the court must assume this allegation to be true at this stage of the case.

Legislative immunity is available to shield legislators from suits for damages for acts they take in their capacities as legislators and which are part of the legislative process. It is not the position of the legislator that determines the immunity, but the nature of the act shielded. For example:

> Though *Tenney [v. Breedhove*, 341 U.S. 367, 71 S. Ct. 783, 95 L. Ed. 1019 (1951)] established the premise that the common law doctrine of legislative immunity is available to state officials, this form of immunity is not available for every act that a legislative official might perform. Only those acts which are "necessary to preserve the integrity of the legislative process" are protected. *United States v. Brewster*, 408 U.S. 501, 517, 92 S. Ct. 2531, 2540, 33 L. Ed. 2d 507 (1972). …. The position of the individual claiming legislative immunity, then, is not dispositive. It is the nature of the act which determines whether legislative immunity shields the individual from suit. Acts such as voting,… speech making on the floor of the legislative assembly,… preparing committee reports,… and participating in committee investigations and proceedings, *Tenney*, 341 U.S. at 377-79, 71 S. Ct. at 788-89 are generally deemed legislative and, therefore, protected by the doctrine of legislative immunity. On the other hand, acts such as the public distribution of press releases and newsletters,… the acceptance of bribes in return for votes on pending legislative business,… the administration of penal facilities,… *and the denial of licenses*, *Polenz v. Parrott*, 694 F. Supp. 599 (E.D.Wis.1988) (alderman and electrical inspector did not act in legislative capacity in depriving plaintiffs of their right to a fair hearing on their liquor license applications), *aff'd in part rev'd in part on other grounds*, 883 F.2d 551 (7th Cir.1989), are generally not protected by the doctrine of legislative immunity. These tasks are not an essential part of the legislative function.

Yeldell v. Cooper Green Hospital, Inc., 956 F.2d 1056, 1062 (11th Cir. 1992) (internal citations omitted; italics added for emphasis). Whether the act is one that affects a wide population or sets a general policy, as distinct from an act affecting a single person or a narrow group, generally is the key that differentiates a legislative act from an administrative or executive act not covered by the immunity. See Id. at 1062. The denial of a license is generally not regarded as a legislative act because it impacts only a single applicant. Hornsby v. Allen, 326 F.2d 605, 608 (5th Cir.

1964) ("[W]e do not conceive the denial of an application for a license to be an act of legislation.").

In the instant case, the members of the city council are plainly entitled to legislative immunity in connection with their *enactment* of Ordinance No. 2315 as a business licensing code for the City.  Enacting a statute to provide for taxing and licensing businesses with the City's jurisdiction is an unquestionable legislative function.  To the extent that plaintiff's claims seek to hold Pierce, Ammons, and Sharp personally liable for the alleged facial unconstitutionality of the business-license ordinance itself (for example, plaintiff's Count Two, "arbitrary and capricious due process" claim), therefore they are entitled to absolute legislative immunity.  Because Zaragoza and Leavings, however, were not members of the legislative body that voted on and enacted the ordinance, being, instead, executive and administrative officers of the City, they are not entitled to legislative immunity.

Insofar as plaintiff alleges that Pierce, Ammons, and Sharp themselves participated in the decision to deny the specific business-license application of the Mission, the plaintiff has alleged a claim that is not covered by legislative immunity because the decision whether to grant or deny a specific license application is not legislative, but administrative or executive in nature.  See Hornsby, *supra*.  The decision whether to grant or deny a specific license application is not legislative because it impacts only a specific person or entity, not a large part of the polity itself. It does not purport to set policy for the political jurisdiction, but simply to apply pre-existing policy to a fact-specific circumstance.  Thus, such a decision is administrative or executive, not legislative.

Turning to the question of qualified immunity, the court is persuaded the Amended Complaint fails to allege a constitutional claim against defendants Zaragoza and Leavings,

entitling them to qualified immunity, but that defendants Pierce, Ammons, and Sharp, who voted effectively to deny the license application, are not entitled to the immunity.   Individual defendants sued pursuant to § 1983 are entitled to qualified immunity from damages "if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).   Analysis of qualified immunity involves a two-step process, first to determine whether the alleged facts establish a violation of the constitution, and second, "whether the right violated was 'clearly established.'"   Id.   For a constitutional right to be "clearly established" means, essentially, that the law is so well-established as to give a reasonable public official "fair warning" that his actions violate a constitutional right.   See Hope v. Pelzer, 536 U.S. 730, 741 (2002).   In the Eleventh Circuit, this may happen in any one of three ways, as follows:

> In this circuit, the law can be "clearly established" for qualified immunity purposes by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or when relevant the highest court of the state where the case arose. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003). In *Vinyard v. Wilson*, 311 F.3d 1340, 1350–53 (11th Cir. 2002), the Eleventh Circuit articulated three ways in which individual state defendants can receive "fair notice" that their conduct violates clearly established law.   First, the words of a federal statute or constitutional provision may be specific enough "to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law." *Id*. at 1350 (emphasis in original).   The Eleventh Circuit considers a case falling into this category an "obvious clarity case." *Id*. at 1350.

> Second, if the conduct at issue is not so egregious as to violate the Constitution or a federal statue on its face, the court must turn its attention to case law that espouses "broad statements of principle ... that are not tied to particularized facts." *Id*. at 1351.   In these types of cases, courts will declare "X Conduct" unconstitutional regardless of the specific factual situation. *Id*.   "[P]ut differently, the precise facts surrounding 'X Conduct' are immaterial to the violation," thus

these decisions can "clearly establish law applicable in the future to different sets of detailed facts." *Id*.

Third, courts must look to cases that tie a particular type of conduct to the specific facts of the case. *Id*. With these cases, courts must examine case law stating that "Y Conduct" is unconstitutional in "Z circumstances." *Id*. If the circumstances facing the official are "materially similar" to those of the fact-specific case, this precedent can clearly establish the applicable law and qualified immunity will not be warranted. Id. at 1352.

Godwin v. Kelley, 2013 WL 3325777, *7-8 (M.D. Ala. July 1, 2013).

As to Zaragoza and Leavings, the Amended Complaint fails to allege facts showing that they were involved in the infringement of plaintiff's constitutional rights. Here it should be noted that the Amended Complaint contradicts itself about the roles played by Mayor Zaragoza and Clerk Leavings. While alleging at one point that these officials "denied" the application, the Amended Complaint goes on to allege very clearly that Zaragoza and Leavings then negotiated an agreement with the Mission and plaintiff that would have granted the license to the Mission but for the fact that the City Council voted to reject it. Plaintiff acknowledges that Mayor Zaragoza and Clerk Leavings initially denied the license because the Mission is a non-profit organization, not subject to the tax imposed by the license ordinance, and that they negotiated a good-faith agreement to issue the license in return for the Mission's agreement to pay a business tax. It was this agreement that the City Council rejected. From these facts, it is clear that neither Zaragoza nor Leavings proximately caused the denial of the business license or the alleged harm to the plaintiff; rather, it was the vote of the City Council that did so. For this reason, the complaint fails to establish a violation of plaintiff's rights by Zaragoza and Leavings, entitling them qualified immunity. The claims against Zaragoza and Leavings must be dismissed.

The court is persuaded, under the facts pleaded in the Amended Complaint,[16] that defendants Pierce, Ammons, and Sharp were on "fair warning" that an arbitrary, capricious, or discriminatory decision to deny the Mission a business license under Ordinance No. 2315 also would violate the constitutional rights of the plaintiff as the landowner who sought to lease property to the Mission.  Plaintiff alleges that the City uses the business license code as a "super-veto" over land uses in order to control to whom landowners lease their property.  The "location-specific" nature of the business-license ordinance makes it akin to a zoning statute.  Although it was the Mission that applied for the business license, certainly the plaintiff was an interested party in that it wanted the Mission's application approved so that the Mission would then lease the plaintiff's building for its business.  To the extent the decision to deny the license prevented the Mission from leasing plaintiff's property, plaintiff suffered an injury due to the alleged arbitrary, capricious, or discriminatory nature of the decision.  Viewing the factual allegations of the complaint as true, the City (acting through the individual defendants) denied the license because it disfavored the nature of the Mission's business, its clients, and its customers, who are described as "low-income and minority persons."   Regardless of whether the decision was a violation of the rights of the Mission or its clients and customers (which question is not before the court), plaintiff has pointed to United States Supreme Court and Eleventh Circuit cases which make clear that a landowner has a constitutional right not to be subjected to arbitrary, capricious, or discriminatory zoning limitations.   Most important of these is Village of Arlington Heights v. Metropolitan Housing Development Co. 429 U.S. 252 (1977), where the Court reiterated that landowners have a constitutional "right to be free of arbitrary or irrational zoning actions."  Id. at 263, 97 S. Ct. at 562; citing Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed.

---

[16]   The court must assume as true the allegations of the Amended Complaint.  It, of course, remains to be seem whether plaintiff can prove them.

303 (1926); <u>Nectow v. City of Cambridge</u>, 277 U.S. 183, 48 S. Ct. 447, 72 L. Ed. 842 (1928);

<u>Village of Belle Terre v. Boraas</u>, 416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974).  Further,

<u>Arlington Heights</u> held clearly that zoning restrictions that have a discriminatory purpose are

prohibited by the equal protection provisions of the constitution.  The case gave "fair warning" to

municipal zoning and land-use authorities that zoning cannot be arbitrary, capricious, or

discriminatory.  Because the business-license ordinance in this case is location specific, it

operates so much like a zoning regulation that such zoning cases as <u>Arlington Heights</u> fairly

warned these officials that a denial of a business license for the arbitrary, capricious, or

discriminatory purpose of preventing a particular land use could infringe the rights of the

landowner, not just the lessee of the landowner.

Whether plaintiff ultimately can prove the facts it has pleaded, the Amended Complaint

alleges that the use of the location-specific business license code to deny the Mission a business

license operated, and was intended to operate, as a land-use provision comparable to a zoning

statute.  The law is well established that such land-use restrictions cannot be arbitrary,

capricious, or discriminatory, as plaintiff alleges this was.  <u>Arlington Heights</u> and a long line of

land-use cases put reasonable public officials, like Pierce, Ammons, and Sharp, on notice that a

decision to deny a license could not arbitrarily, capriciously, or discriminatorily deprive the

landowner of the use of his property.  Accordingly, Pierce, Ammons, and Sharp are not entitled

to qualified immunity with respect to plaintiff's First, Fifth, and Fourteenth Amendment claims.


<u>CONCLUSION</u>

In summary, the defendants' motion to dismiss the Amended Complaint is due to be

GRANTED IN PART and DENIED IN PART, as follows:

37

1.   The motion is GRANTED as to the federal-law claims against individual defendants Zaragoza and Leavings on the basis of their qualified immunity.

2.   The motion is DENIED as to the federal-law claims against individual defendants Pierce, Ammons, and Sharp in their personal capacities.

3.   The motion is due to be GRANTED with respect to Count Nine of the Amended Complaint, which alleges a claim for civil conspiracy under both federal and state law.

4.   The motion is due to be GRANTED as to Count Seven of the Amended Complaint.

5.   The motion is DENIED in all other respects.


A separate order will be entered.

DONE this 9th day of September, 2013.


_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE